Saeed AHMED, Plaintiff,

v.

Alejandro MAYORKAS, Director, United States Citizenship and Immigration Services, Defendant.

No. C 08–1680 MHP.

United States District Court,
N.D. California.

Dec. 22, 2009.

Jonathan Myles Kaufman, The Law Offices of Jonathan M. Kaufman, Paul Mar-

tin Kaplan, Paul M. Kaplan, Attorney at Law, San Francisco, CA, for Plaintiff.

## MEMORANDUM & ORDER

MARILYN HALL PATEL, District Judge.

Plaintiff Saeed Ahmed challenges the procedures used by the U.S. Citizenship and Immigration Services (USCIS) to adjudicate plaintiff's application for adjustment of status to lawful permanent resident (LPR). He seeks declaratory and injunctive relief pursuant to the Administrative Procedure Act (APA). Now before the court is defendant Mayorkas's motion to dismiss.[1] Defendant, the director of the USCIS, contends that this court lacks subject matter jurisdiction to review plaintiff's operative complaint. Having considered the parties' arguments and submissions, the court enters the following memorandum and order.

*BACKGROUND*[2]

### I. *Plaintiff*

Plaintiff Ahmed is a citizen of Pakistan who was granted asylum by the U.S. Immigration and Naturalization Service ("INS") on January 14, 2000. In his asylum application, Ahmed indicated that he feared further arrest and torture for his involvement in the Muhajir Quomi Movement (MQM), which among other things represents the interests of Urdu-speaking Muslim Pakistanis who immigrated from India to Pakistan in the wake of the 1948 partition. On February 5, 2001, plaintiff applied to USCIS, the appropriate successor agency to the INS, for an adjustment of status to LPR, i.e., green card holder. Seven years later, on February 20, 2008, USCIS denied Ahmed's application. USCIS stated that Ahmed was inadmissible because he had provided material support to a terrorist organization. The letter denying plaintiff's application explained as follows:

You indicated in your asylum application that you were a member of the Mohajir Quomi Movement and that you later became a member of the MQM–A. Specifically, you participated in demonstrations, participated the boycott [sic] of an election and helped move furniture out of the MQM office when you learned that it would be taken over by the MQM Haqiqi. You further indicated that you started organizing the Muttahida Quomi Movement as Altaf Hussain had promised in Rawal Pindi. . . .

The Memorial Institute for the Prevention of Terrorism (MIPT) is a non-profit organization dedicated to preventing terrorism on U.S. soil or mitigating its effects.

. . . According to public information on www.tkb.org, "In 2001, the MQM detonated a series of explosive devices in Karachi to protest a water shortage in the city." The Institute for Conflict Management is a non-Profit Society set up in 1997 in New Delhi. . . . According to public information on www.satp.org, "Originally formed as the Mohajir Quomi Movement (MQM), it is now split into two factions. The faction led by the founder Altaf Hussain was renamed Muttahida Quomi Mahaz and is commonly referred to as MQM(A). A breakaway faction, created in 1992, retains the original name Mohajir Quomi Movement—with the suffix Haqiqi with means real—and is commonly referred to as MQM(H). The two factions have been responsible for several incidents of

---

1. Alejandro Mayorkas was sworn in as Director, USCIS, on August 12, 2009. He is automatically substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

2. Unless otherwise noted, the background facts are not in dispute on this motion.

urban terrorism even as the MQM(A) participates in Pakistan's electoral process." According to the information found in the aforementioned sources, the actions and activities of MQM, MQH–H and MQM–A meet the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III). MQM, MQH–H and MQM–A engage in armed conflict with opponents including the government and police, detonation of explosive devices and random attacks against civilians. . . .

The evidence indicates that you engaged in terrorist activity by providing material support to the Mohajir Quomi Movement and MQM (A). In addition, you provided material support to a terrorist organization by starting to organize the Muttahida Quomi Movement in Rawal Pindi. Because your acts of material support to the Mohajir Quomi Movement, MQM (A) and the Muttahida Quomi Movement were voluntary, you are inadmissible under INA section 212(a)(3)(B)(i)(I).

Docket No. 18 (First Amended Complaint or "FAC"), Exh. C. Subsection 212(a)(3)(B)(i)(I) of the Immigration and Nationality Act (INA), codified at subsection 1182(a)(3)(B)(i)(I) of Title 8, makes "any alien who has engaged in a terrorist activity" inadmissible to the United States. "Engaging in terrorist activity" can include "afford[ing] material support" to an undesignated terrorist organization which engaged in terrorist activity. *Id.* § 1182(a)(3)(B)(iv)(VI)(dd). A "terrorist activity" includes "any activity which is unlawful under the laws of the place where it was committed (or which, if committed in the United States, would be unlawful under the laws of the United States or any State)" and which involves any one of a number of activities such as hijacking, assassination or "the use of any explosive or firearm (other than for mere personal monetary gain)" with the intent to endan-

ger an individual or cause substantial property damage. *See* 8 U.S.C. § 1182(a)(3)(B)(ii).

## II. *Original Complaint*

On March 27, 2008, Ahmed filed his original complaint, alleging that the government's denial of his application was arbitrary and capricious under the APA, 5 U.S.C. sections 701–706. Unbeknownst to plaintiff, on March 26, 2008, the USCIS had issued an internal policy memorandum ordering the review of prior denials of certain cases decided after December 26, 2007. In response to this memorandum, four weeks later, on April 23, 2008, USCIS reopened Ahmed's application. FAC, Exh. D. A month later, on May 27, 2008, defendant filed a motion to dismiss this action based on lack of ripeness. On July 14, 2008, the court heard the motion and granted plaintiff leave to amend his complaint in light of the reopening of his case.

## III. *First Amended Complaint*

Plaintiff filed his first amended complaint on July 15, 2008. Rather than challenge any decision, the first amended complaint challenged the ongoing delay in finally adjudicating plaintiff's application. The government challenged both the court's jurisdiction and the merits of the claims. On January 7, 2009, the court entered an order denying defendant's motion to dismiss for lack of subject matter jurisdiction and ordering defendant to produce additional materials for the purpose of determining whether the continuing delay constituted unreasonable delay for purposes of the APA. Docket No. 33 (Order of Jan. 2009). Plaintiff's counsel indicated at a February 9, 2009, status conference that his client would prefer that USCIS adjudicate his application rather than continue to wait to see whether an exemption would be made available to plaintiff. On March 11, 2009, the US-

CIS again denied plaintiff's adjustment of status application. Docket No. 40.

## IV. *Second Amended Complaint*

The parties thereafter stipulated to the filing of a second amended complaint (SAC). The SAC alleges that USCIS regulations, as well as the Fifth Amendment's Due Process Clause, entitled plaintiff to notice of derogatory information and an opportunity to appear at an interview before USCIS could reject his petition. Defendant filed a motion to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(1).

## *LEGAL STANDARD*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court. *See, e.g., Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039–40 (9th Cir.2003), *cert. denied,* 541 U.S. 1009, 124 S.Ct. 2067, 158 L.Ed.2d 618 (2004). The plaintiff bears the burden of establishing the propriety of the court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Consequently, a Rule 12(b)(1) motion will be granted if the complaint, when considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction. *Savage,* 343 F.3d at 1039 n. 2; *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). Alternatively, a defendant may seek dismissal under Rule 12(b)(1) by presenting evidence to refute the jurisdictional facts alleged in the complaint. *Thornhill,* 594 F.2d at 733. Once the defendant has introduced such evidence, the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage,* 343 F.3d at 1039 n. 2 (citation omitted).

## *DISCUSSION*

### I. *Jurisdiction*

Whether a federal court has subject matter jurisdiction to entertain a plaintiff's petition for relief is always a threshold question. *See* Fed.R.Civ.P. 12(h)(3). Defendant does not present evidence to refute the jurisdictional facts alleged in the complaint; therefore, his challenge is facial.

The APA governs judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Final agency actions are defined as actions which mark the consummation of the agency's decision making process, i.e., are not merely tentative or interlocutory in nature, and which determine rights or obligations or from which legal consequences will flow. *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). An agency action or decision may be set aside if the court finds it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and a court may "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). The court lacks jurisdiction over a claim brought pursuant to the APA to the extent the relevant statute precludes judicial review or commits the agency action to agency discretion. *See* 5 U.S.C. § 701(a)(1) & (2). "Even where statutory language grants an agency unfettered discretion, its decision may nonetheless be reviewed if regulations or agency practice provide a meaningful standard by which this court may review its exercise of discretion." *Spencer Enters., Inc. v. United States,* 345 F.3d 683, 688 (9th Cir.2003) (citation and internal quotation marks omitted).

Defendant does not challenge plaintiff's assertion that the USCIS's denial of

plaintiff's application is a final agency action for purposes of the APA. Defendant argues that a specific provision of the amended Immigration and Nationality Act—INA § 212(d)(3)(B)(i), codified at 8 U.S.C. § 1182(d)(3)(B)(i)—precludes review by a district court of all aspects of the USCIS's decision to deny plaintiff's section 1159(b) application and the procedures used to reach it. Defendant cites no case so holding, and plaintiff cites no case holding defendant's position to be incorrect.[3] The issue appears to be one of first impression.

The full text of subsection 1182(d)(3)(B)(i) reads in its entirety:

(B) (i) The Secretary of State, after consultation with the Attorney General and the Secretary of Homeland Security, or the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's sole unreviewable discretion that subsection (a)(3)(B) of this section shall not apply with respect to an alien within the scope of that subsection or that subsection (a)(3)(B)(vi)(III) of this section shall not apply to a group within the scope of that subsection, except that no such waiver may be extended to an alien who is within the scope of subsection (a)(3)(B)(i)(II) of this section, no such waiver may be extended to an alien who is a member or representative of, has voluntarily and knowingly engaged in or endorsed or espoused or persuaded others to endorse or espouse or support terrorist activity on behalf of, or has voluntarily and knowingly received military-type training from a terrorist organization that is described in subclause (I) or (II) of subsection (a)(3)(B)(vi) of this section, and no such waiver may be extended to a group that has engaged [in][4] terrorist activity against the United States or another democratic country or that has purposefully engaged in a pattern or practice of terrorist activity that is directed at civilians. Such a determination shall neither prejudice the ability of the United States Government to commence criminal or civil proceedings involving a beneficiary of such a determination or any other person, nor create any substantive or procedural right or benefit for a beneficiary of such a determination or any other person. Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of Title 28, no court shall have jurisdiction to review such a determination or revocation except in a proceeding for review of a final order of removal pursuant to section 1252 of this title, and review shall be limited to the

---

**3.** Plaintiff asserts that *American Academy of Religion v. Napolitano,* 573 F.3d 115 (2d Cir. 2009), is on point. In that case, several organizations brought an action challenging the denial of a visa to Tariq Ramadan, a prominent Swiss-born Islamic scholar, alleging the denial violated their First Amendment right to have Ramadan share his views with these organizations and with the public in this country. *Id.* at 117. The court rejected the government's jurisdictional challenge; however, the court explicitly limited its holding to situations involving a First Amendment claim, relying upon *Kleindienst v. Mandel,* 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) (recognizing a First Amendment right to "hear, speak, and debate with" a visa applicant). The *American Academy* court wrote: "We conclude that, where a plaintiff, with standing to do so, asserts a First Amendment claim to have a visa applicant present views in this country, we should apply *Mandel* to a consular officer's denial of a visa." 573 F.3d at 125. The instant action does not implicate the First Amendment concerns of *American Academy,* as plaintiff resides in the United States.

**4.** The language of the statute as published here reads "engaged terrorist activity."

extent provided in section 1252(a)(2)(D) of this title. The Secretary of State may not exercise the discretion provided in this clause with respect to an alien at any time during which the alien is the subject of pending removal proceedings under section 1229a of this title.

8 U.S.C. § 1182(d)(3)(B)(i). In support of his interpretation, defendant purports to rely upon the statute's legislative history and principles of statutory interpretation.

■■ When interpreting a statute, the court begins with the statute's plain language. *See Arizona Health Care Cost Containment Sys. v. McClellan*, 508 F.3d 1243, 1249 (9th Cir.2007). "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. In such cases, the intention of the drafters, rather than the strict language, controls." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The first sentence of subsection 1182(d)(3)(B)(i) references the Secretary of State and Secretary of Homeland Security's "sole unreviewable discretion" to determine "that subsection (a)(3)(B) of this section shall *not* apply with respect to an alien within the scope of that subsection or that subsection (a)(3)(B)(vi)(III) of this section shall not apply to a group within the scope of that subsection." 8 U.S.C. § 1182(d)(3)(B)(i) (emphasis added). Subsection (a)(3)(B) makes an alien who "has engaged in a terrorist activity" inadmissible. Subsection (a)(3)(B)(vi)(III) defines a "terrorist organization" for purposes of inadmissibility determinations. Thus, section 1182(d)(3)(B)(i), the provision upon which defendant relies, commits to the respective Secretaries' sole unreviewable discretion the decision that certain inadmissibility grounds should *not* apply to an individual or group. Stated another way, the decision to *waive* certain admissibility

requirements is committed to the Secretaries' sole discretion. It is this discretion to make such a determination to which the third sentence of the provision, limiting judicial review, unambiguously applies. Accordingly, the plain language of subsection 1182(d)(3)(B)(i) bars this court from reviewing any decision by the Secretary of Homeland Secretary to waive, or revoke waiver of, subsections (a)(3)(B) or (a)(3)(B)(vi)(III) in connection with a given alien. Plaintiff does not seek review of such a decision.

Defendant advances a number of reasons why the court should ignore the plain meaning of subsection 1182(d)(3)(B)(i) to find that the provision acts as a jurisdictional bar to the instant action. While admitting that the provision's third sentence "could be viewed as referencing a determination to *exempt* an alien from the application of inadmissibility grounds," defendant asserts that this outcome is not what Congress intended. Docket No. 53 (Def.'s Reply) at 4 (emphasis in original). Defendant does not reference an iota of legislative history but instead contends that its interpretation is the only one that would give full effect to all of the words of the provision. As the court understands defendant's argument, the phrase "Such a determination ..." found in the second and third sentences refers to something other than the waiver determination described in the first sentence. Defendant also argues that Congress must have intended the third sentence to refer to something broader than waiver authority, because Congress omitted any reference to the word "waiver" in the third sentence. These arguments are unpersuasive. Agreeing with defendant's unsupported assertions would require the court to accept a reading of the statute that is not only tortured but also illogical. The first sentence sets out authority to "determine" *waivers*, and the following sentences plain-

ly refer to "such a determination." The fact that Congress did not include the word "waiver" in every sentence is irrelevant.

Defendant notes that if the only determinations at issue under subsection 1182(d)(3)(B)(i) are decisions to waive inadmissibility, i.e., to admit an alien who would otherwise be inadmissible, then no alien would ever challenge them. Thus, according to defendant, there would never be any challenge and the language pertaining to judicial review would be meaningless surplusage. But as defendant himself points out, the third sentence references "such determination *or revocation.*" 8 U.S.C. § 1182(d)(3)(B)(i) (third sentence) (emphasis added). This means that an alien can challenge neither a determination that he is entitled to a waiver nor a later revocation of such determination—the latter of which would be prejudicial to the alien. The court does not assume that Congress's choice to use "or revocation" in the third sentence, when it did not use those words in the second sentence, was happenstance. Plainly Congress recognized the likelihood that individuals who initially received a waiver and then found such waiver revoked would challenge such revocation in the courts. The limitation on judicial review ensures that those challenges will not be brought in a district court but rather will be brought in a court of appeals on appeal from a removal order. The interpretation of subsection 1182(d)(3)(B)(i) as pertaining

specifically to waiver determinations does not render any part of the provision mere surplusage, nor does it produce a result demonstrably at odds with the intent of the drafters. Indeed, it is the only interpretation that gives full and coherent effect to the entire provision.

Defendant also asserts that an interpretation of the statute that removes all aspects of terrorism-related inadmissibility determinations from district court review "is appropriate in the context of national security." Whatever the merits of this policy position, it is not for the USCIS or this court to set legislative policy. In any event, interpreting subsection 1182(d)(3)(B)(i) in accordance with its plain language does not throw open the door to judicial review of ultimate decisions whether to grant adjustments of status, which would arguably impact national security. Subsection 1252(a)(2)(B)(ii) forecloses such a result. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review ... any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief [to persons seeking asylum].").[5]

Finally, it should be noted that accepting defendant's position would utterly deprive persons in the position of plaintiff of the ability to challenge any procedural irregularities occurring during the adjudi-

---

**5.** The court asked the parties for additional briefing on the relevance, if any, of *Hassan v. Chertoff,* 543 F.3d 564 (9th Cir.2008), to the instant case. In that case, the Court of Appeals affirmed a district court's ruling that jurisdiction to review a petitioner's denial of adjustment of status application was lacking, citing subsections 1252(a)(2)(B)(i) and (ii) of Title 8. The instant parties agreed *Hassan* is irrelevant to the instant case. *See* Docket No. 56 (Pl.'s Br.); Docket No. 57 (Def.'s Br.).

Defendant wrote: "Defendant and Plaintiff agree that USCIS's determination of Plaintiff's inadmissibility is a 'purely legal' one and that, as such, the bar against judicial review of discretionary determinations pursuant to INA § 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii), does not preclude judicial review of Plaintiff's inadmissibility determination." Def.'s Br. at 3. Defendant bases his motion to dismiss solely on subsection 1182(d)(3)(B)(i). *Id.* at 1.

cation of their respective adjustment of status applications.[6] The benefits of adjusting status, i.e., advancing from the status of refugee to that of LPR, extend beyond simply making removal less likely. For instance, while plaintiff's asylum status allows him to work inside the United States and—possibly[7]—to travel outside the United States, plaintiff must pay fees for work and travel documents. *See* 8 C.F.R. § 103.7(b)(1). More significantly, LPR status puts one on track to ultimately obtain U.S. citizenship. Defendant notes that limited review of inadmissibility decisions in the Court of Appeals is available pursuant to subsection 1252(a)(2)(D) of Title 8.[8] Yet defendant also asserts that such review is available only from a final order of removal, not from a finding of inadmissibility where no steps have been taken to initiate removal procedures.[9] There is no allegation or evidence that the government has sought to remove plaintiff. Under the statutory scheme as defendant would have it, no judicial forum at all is available to an alien not subject to a final order of removal who is seeking review of the procedures used to adjudicate his adjustment of status determination. Defendant has presented no evidence that Congress intended such a result, which creates a legal black hole and also runs contrary to the purposes of the APA. *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

Plaintiff has met his burden of demonstrating that this court has jurisdiction to entertain his complaint.

## II. *Merits*

Defendant styled the instant motion as a "motion to dismiss" but cited both Rule 12(b)(1) (motion to dismiss for lack of subject matter jurisdiction) and Rule 12(c)

---

6. In the context of inadmissibility and removal, the Ninth Circuit recently recognized that a failure to allow the presentation of evidence might amount to a violation of due process. In *Khan v. Holder*, 584 F.3d 773 (9th Cir. 2009), the court rejected the petitioner's claim that his due process rights had been violated because he was not afforded an opportunity to present evidence relevant to his admissibility under the new standards imposed by the REAL ID Act. *Id.* at 778–79. The court found that the new standard served only to increase the petitioner's burden; therefore, the immigration judge was correct to conclude the petitioner could not succeed under the new standard where he had already failed under the old one. *Id.* In its analysis, the court relied upon the fact that evidence had been presented. *See id.* ("Because Khan had already presented evidence that failed to meet the lower standard pre-REAL ID Act, there was no due process violation in denying him the opportunity to present evidence to meet the higher standard post-REAL ID Act.").

7. Despite plaintiff's asylee status it is not apparent he can travel outside the United States, because he has also been determined to be inadmissible. Defendant has not shown that plaintiff could expect to travel abroad and then reenter the United States. When the issue was raised at oral argument, counsel for defendant was unable to point to any sort of waiver that would allow entry of an individual determined to be inadmissible as having engaged in terrorist activity, even if he also had asylee status. Nor has defendant filed any supplemental information addressing this question.

8. *See* 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.").

9. The parties have not fully briefed this point, and the court does not here hold that defendant's interpretation of this aspect of subsection 1252(a)(2)(D) is necessarily correct.

(motion for judgment on the pleadings) in his notice of motion. Docket No. 50. In his six-page memorandum of points and authorities, defendant discussed only the Rule 12(b)(1) legal standard and made arguments pertaining only to subject matter jurisdiction. Plaintiff's eight-page opposition contested defendant's subject matter jurisdiction arguments but also included a few pages of argument directed primarily at extolling the merits of his case. Docket No. 51. Defendant responded by filing a fifteen-page reply brief, the bulk of which advanced arguments attacking the merits of plaintiff's complaint. Docket No. 53. Yet the relief requested at the conclusion of defendant's reply was again simply dismissal of the second amended complaint for lack of subject matter jurisdiction. *Id.* at 15.

If defendant intended to move for judgment on the pleadings he should have included his merits arguments in his opening brief. As the briefs unfolded, defendant, intentionally or not, sandbagged plaintiff by first raising merits arguments in the reply brief. On the papers before it, the court cannot rule on a motion for judgment on the pleadings, if indeed defendant intended to move for such.

*CONCLUSION*

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.

IT IS SO ORDERED.